568 A.2d 22

Robert Lee SIMPLER

v.

STATE of Maryland.

No. 33, Sept. Term, 1989.

Court of Appeals of Maryland.

Jan. 11, 1990.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

RODOWSKY, Judge.

This is a stop and frisk case. The stop was based on possession of beer by minors. The frisk of the petitioner, Robert Lee Simpler (Simpler), produced a bong.[1] This resulted in Simpler's arrest, a search incident, and discovery of a small quantity of marijuana. After denying a motion to suppress, the Circuit Court for Cecil County convicted Simpler of possession of marijuana. Simpler appealed to the Court of Special Appeals which affirmed in an unreported opinion. We granted Simpler's petition for a writ of certiorari. As hereinafter explained, Simpler's challenge to the frisk is dispositive. Essentially, there was a lack of reasonable suspicion that Simpler was armed and dangerous when frisked.

The relevant facts are limited to those produced at the suppression hearing, see *Trusty v. State*, 308 Md. 658, 521 A.2d 749 (1987), which are most favorable to the State as the prevailing party on the motion. Around 8:30 P.M. on May 8, 1987, Sergeant Guy Wassmer (Wassmer) of the Cecil County Sheriff's Department was in uniform and on routine patrol in the vicinity of the Winding Brook Housing Project. Riding with Wassmer in the patrol car was a young man who was an explorer scout. Wassmer saw black smoke coming from a wooded area behind the project. In order to investigate, Wassmer and the explorer scout walked toward the smoke about one half mile on a semi-clear path through the woods. They came upon a group of four young people,

---

* BLACKWELL, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

1. "Bong" is a term appearing in Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 287A(a)(12)(xii) proscribing drug related paraphernalia and is a type of pipe used for smoking marijuana.

three males and a female, who were standing around an open fire and drinking Busch beer. Some of the individuals appeared to Wassmer to be underage.

On direct examination by the State at the hearing, Wassmer testified:

"I approached them and advised them of who I was ... and requested identification from each individual.

"Q. And in the process of obtaining identification from each individual that was there, what if any further action did you take with regard to protecting yourself and the explorer scout that was in your company?

"A. I briefly patted down each subject, except for the female.

"Q. And when it came time to pat down the Defendant Simpler, what if anything did you notice or what if anything occurred at that time?

"A. I found what I believed to be a marijuana pipe in his rear pocket with marijuana residue on it."

Wassmer seized the pipe and arrested Simpler. Wassmer then observed a jacket lying on a fallen log approximately five to eight feet from Simpler. Addressing the group generally, Wassmer asked who owned the jacket. Simpler said it was his. Wassmer testified that, in a search of the jacket, he found a plastic baggie containing marijuana.[2]

On cross-examination Wassmer related that he had had only one prior contact with Simpler when Wassmer was on

---

**2.** There is a conflict between the State's evidence at the suppression hearing and the agreed statement of facts on which the conviction was based. In the agreed statement the defense acknowledged that a bong was found in Simpler's pants pocket during the patdown, but the defense denied that that was the pipe in which the presence of marijuana was confirmed by laboratory analysis. The defense says that a second bong was found in the jacket. It is the marijuana residue in the second bong of which Simpler admitted possession in the agreed statement. The agreed statement of facts did not admit that the baggie of marijuana was found in Simpler's jacket. The defense evidence at the suppression hearing was that the baggie had been found lying on the ground a short distance from the jacket. The trial judge (Hon. Donaldson C. Cole, Jr.) based his guilty verdict on the admissions concerning marijuana in a bong found in the jacket.

call with another deputy. Wassmer did not even know Simpler's last name. Simpler's ID demonstrated that he was twenty-one years of age. (Simpler's date of birth is August 4, 1965.)

When defense counsel suggested that Wassmer was actually looking for drugs when he conducted the frisks, Wassmer said:

"I had information that Mr. Simpler carried a knife. It's one of the kinds of knives that's used to cut carpet. My prior contact with Mr. Simpler, I had him in my car, and like I told you before, I didn't know his last name. But when he got into my car on a prior occasion, I asked him if he had any weapons on him, and he showed me that he had this knife that cuts carpet, carpeter's knife."

The earlier occasion when Wassmer was in Simpler's presence was "just a contact," and not a "confrontation." Although Wassmer frisked all the males and, by consent, searched the female's pocketbook, he had no information that any person in the group, other than Simpler, had ever previously carried any type of knife.

Wassmer further testified on cross-examination:

"Q. Okay. Now, you're saying you feared for your safety?

"A. Yes. I don't actually fear for my safety, but as a matter of routine caution, and departmental policy in transporting people, he would be frisked to make—

"Q. In transporting people?

"A. Yes.

"Q. And at that time he was over 21 and you had no intention of transporting him, did you?

"A. At that time, no, sir."

Wassmer issued citations for the "juvenile subjects" for possession of alcoholic beverages and arrested Simpler for possession of marijuana.

Hon. George B. Rasin, Jr., presiding at the suppression hearing, made the following findings of fact:

"So I think a step at a time, reviewing the progression of what the officer did ... was normal for a police officer to do. He made an investigation. He observed what appeared to be a violation of the law so far as juveniles were concerned. And I believe it's also somewhere a violation of either the juvenile law or the criminal law, furnishing alcohol to minors is also an offense.

"And it's normal for the officer to pat down those who were there, his training, it's normal for him if he observed something that people don't usually carry in their pockets, or if they do it's a bulky thing and the officer wants to know what it is, going in the pocket he observes something that appears to be paraphernalia. And based on his training, the inference is that he took the Defendant into custody, in effect he was arrested."

The sequence of events bears on the statutory violations on which Wassmer could have acted, but the sequence is not precisely set forth in the record. If Wassmer frisked Simpler before examining Simpler's ID, Wassmer, at the time of the frisk, could have had reasonable suspicion that Simpler was under age twenty-one and possessing alcoholic beverages in violation of Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 400A.[3] If Wassmer examined Simpler's ID before the patdown, then Wassmer could have had reasonable suspicion that Simpler had obtained the beer for the juveniles in violation of Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Art. 27, § 401.[4]

---

**3.** Article 27, § 400A provides:

"It is unlawful for any person under the age of 21 years to have in his possession, or under his charge or control, any alcoholic beverage, unless the person is a bona fide employee of the license holder, as defined in Article 2B, and has in his possession, or under his charge or control, alcoholic beverages during regular working hours and in the course of his employment."

**4.** At the time of the violation Art. 27, § 401 in effect provided that which it more clearly provided following amendments by the Acts of 1988, Chs. 6 and 367, whereby it now reads:

"It is unlawful for any person to obtain any alcoholic beverages from any person licensed to sell alcoholic beverages for consump-

Sections 400A and 401 are codified under the subheading, "Alcoholic Beverages—Offenses." Section 403A of that same subheading provides in relevant part as follows:

"(a) *Person under 18.*—Any person under the age of 18 years who violates the provisions of this subheading shall be issued a citation by a police officer authorized to make arrests and shall be subject to the procedures and dispositions provided in Subtitle 8 [Juvenile Causes] of Title 3 of the Courts and Judicial Proceedings Article.

"(b) *Person 18 or older.*—Any person 18 years old or older who violates the provisions of this subheading shall be issued a citation and be subject to the provisions of § 403B of this subheading."

Disposition of "Alcoholic Beverages—Offenses" is described in § 403B. "For purposes of [that] section, a violation of the provisions of [that] subheading is deemed a Code violation and is a civil offense." § 403B(a). A citation is to be issued to the person committing a Code violation. § 403B(b). The citation advises, *inter alia,* that the District Court of Maryland will send a summons to appear for trial to the person receiving the citation. § 403B(c)(vii). In May 1987 the maximum fine for a first offense was $100. § 403B(f). Subsection (g) provides that "[a]djudication of a Code violation is not a criminal conviction for any purpose, nor does it impose any of the civil disabilities ordinarily imposed by a criminal conviction." Under subsection (*l* ), however, "[t]he State's Attorney of any county may prosecute a Code violation in the same manner as prosecution of a violation of the criminal laws of this State."

Thus, when Wassmer frisked Simpler, the most serious violation by Simpler of which Wassmer might have had reasonable suspicion was a civil offense for which the maximum fine, for all that Wassmer knew at the time, was

tion by any person under 21 years of age, knowing that the person is under 21 years of age."

$100.[5] Assuming that Wassmer reasonably suspected that Simpler had obtained beer for minors, Wassmer was authorized to "stop" the persons gathered around the fire in order to obtain identification and to issue citations.

But issuance of a citation is not a custodial arrest, and the frisk in this case is not a search incident to an arrest. Here, there was no objective basis for a custodial arrest of Simpler at the time of the frisk, and there was at that time no anticipated need to transport Simpler from the scene. The arrest in this case is based on the discovery of paraphernalia (either with or without controlled dangerous substance traces) during the patdown. The question presented here is whether, under all of the circumstances, the frisk which followed the stop was constitutionally permitted.

The holding of *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889, 911 (1968) is that

"where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such

---

**5.** In its brief the State attempts to inject Md.Code (1957, 1987 Repl. Vol.), Art. 2B, § 207 into the case, because, under § 208, § 207 is a misdemeanor which carries up to ninety days imprisonment. Section 207 reads in relevant part:

"(a) A person may not:

"(1) Be intoxicated and endanger the safety of another person or property; or

"(2) Be intoxicated or drink any alcoholic beverage in a public place and cause a public disturbance."

There is no evidence in the instant case rising to the level of reasonable suspicion that any of the elements of the § 207 misdemeanor were present.

persons in an attempt to discover weapons which might be used to assault him."

And *see Michigan v. Long,* 463 U.S. 1032, 1034, 103 S.Ct. 3469, 3473, 77 L.Ed.2d 1201, 1210 (1983) (a police officer may neutralize the threat of physical harm "when he possesses an articulable suspicion that an individual is armed and dangerous."); *Ybarra v. Illinois,* 444 U.S. 85, 92–93, 100 S.Ct. 338, 343, 62 L.Ed.2d 238, 246 (1979) ("A reasonable belief that [the suspect] was armed and presently dangerous [is] a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons." (Footnote omitted)); *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed. 917, 935 (1968) ("In the case of the self-protective search for weapons, [the police officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.").

The suspected criminal activity itself can furnish the dangerousness justifying a frisk following a *Terry* stop. Professor La Fave puts it this way:

"It is undoubtedly true, however, that in some cases the right to conduct a protective search must follow directly from the right to stop the suspect. The Court seems to take this view in *Terry,* although Justice Harlan's concurring opinion proceeds to 'make explicit what I think is implicit' in the majority opinion, namely, that 'the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence.' Lower courts have been inclined to view the right to frisk as being 'automatic' whenever the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or for protection against the victim or others involved. This includes such suspected offenses as robbery, burglary,

rape, assault with weapons, homicide, and dealing in large quantities of narcotics."

3 La Fave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 505–06 (1987) (footnotes omitted).

Judge Moylan, writing for the Court of Special Appeals, has succinctly pointed out that "[a]lthough a reasonable 'stop' is a necessary predecessor to a reasonable 'frisk,' a reasonable 'frisk' does not inevitably follow in the wake of every reasonable 'stop.'" *Gibbs v. State*, 18 Md.App. 230, 238–39, 306 A.2d 587, 592 (footnote omitted), *cert. denied*, 269 Md. 759 (1973). Professor La Fave has listed a number of cases where the permissible stop has not justified the succeeding frisk. Without necessarily implying our agreement with each of the cases cited, we quote:

"But for other types of crimes, such as trafficking in small quantities of narcotics, possession of marijuana, illegal possession of liquor, prostitution, bookmaking, shoplifting, underage drinking, minor assault without weapons, or vagrancy, there must be, as Justice Harlan noted in *Terry*, 'other circumstances' present. Illustrative of the circumstances which the courts have deemed sufficient are: a characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; discovery of a weapon in the suspect's possession; and awareness of circumstances which might prompt the suspect to take defensive action because of a misunderstanding of the officer's authority or purpose. Also, in an otherwise doubtful case the frisk may be justified by the fact that the investigation requires transporting the suspect in the police car to another location."

La Fave, *supra*, § 9.4(a), at 507–08 (footnotes omitted).

The underage drinking case referred to is *People v. Sherman*, 197 Colo. 442, 593 P.2d 971 (1979). There, two

Denver police officers at about 11:00 P.M. observed four apparently underage youths carrying beer bottles on a public street. The officers stopped the youths, received proof of identification and conducted patdown searches in the course of which the defendant was found to be carrying approximately one hundred phenobarbital pills. The trial court suppressed the seized pills after concluding that there was no rational basis for suspecting that the defendant was armed. The Supreme Court of Colorado affirmed without unnecessary discussion of what was essentially a finding of fact. From the standpoint of the law of stop and frisk the case stands for the proposition that a stop for underage drinking does not of itself justify a frisk. There would have to be additional circumstances.

Two decisions of the Supreme Court of the United States illustrate additional circumstances. In *Michigan v. Long, supra,* two police officers on patrol in a rural area, after midnight, observed an automobile traveling erratically and at excessive speed. The car went off the road and stopped in a shallow ditch. As the police approached on foot the suspected drunk driver was standing at the rear of the vehicle. Through the open front left door of the car, the police saw a large hunting knife on the floor of the vehicle. At that time the officers frisked the suspect. 463 U.S. at 1036, 103 S.Ct. at 3474, 77 L.Ed.2d at 1211. In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the police stopped a vehicle because its license plates had expired. When the driver got out of the car at the direction of the officers, they noticed a bulge under the driver's coat. "The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer." *Id.* at 112, 98 S.Ct. at 334, 54 L.Ed.2d at 338.

The instant matter is analogous to stops of vehicles for minor traffic violations in that the stop is for the purpose of issuing a citation. Further, as in the case of a motorist who has been directed to get out of the vehicle, *see Mimms, supra,* Simpler and the three juveniles were standing in full

view. While there undoubtedly is some risk to the police in every confrontation, *Terry* has never been thought to authorize a protective frisk on the occasion of every authorized stop. The very minor offense authorizing the stop here cannot, in and of itself, justify the frisk. To so hold would mean that every motorist issued a citation for a minor traffic offense would enjoy no constitutional protection from a protective search for weapons.

The State in this case urges, and the Court of Special Appeals agreed, that Wassmer's knowledge that Simpler had carried a carpeter's knife on a prior occasion supplied sufficient additional circumstances to justify the frisk. But Wassmer's description of the earlier occasion when he was in Simpler's presence is devoid of any aspect of dangerousness. The record does not describe the carpet knife. The necessary inference is that it is a knife which may lawfully be carried, just as the ordinary pocket knife may lawfully be carried. On the earlier occasion, Wassmer, knowing that Simpler had the knife in his possession, continued whatever their conversation was within the close confines of a police car. There is no indication that Simpler was hostile toward Wassmer, or police officers generally, based on the prior contact between the two. There is no evidence of what Simpler's employment was, whether the knife was a job tool, or whether the contact took place at a job site during working hours. There is no evidence indicating that Simpler regularly carried the knife. This evidence of prior contact added to the civil offense does not justify the frisk in this case. To hold otherwise would mean that the police could constitutionally frisk every motorist to whom a citation was issued for a minor traffic violation if the officer knew that the motorist on some prior occasion had carried a pocket knife.

The circuit judge at the suppression hearing did not seem to sustain the frisk based on the evidence that Simpler had previously carried a carpet knife. Rather, the circuit judge found that it was "normal for the officer to patdown those who were there, his training...." This finding does not

distinguish between the patdowns of Simpler and of the underage males. The finding echoes Wassmer's testimony that the patdowns were "a matter of routine caution." Underlying the testimony and the finding is the notion that any lawful stop justifies a frisk. As we have seen above, that is not the law. Rather, the burden was on the State at the suppression hearing to demonstrate that the seizure fell within one of the well-delineated exceptions to the warrant requirement. *See State v. Wilson,* 279 Md. 189, 194, 367 A.2d 1223, 1227 (1977). This the State failed to do.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO ENTER A JUDGMENT VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AND REMANDING THIS CASE TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS, IF ANY, CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CECIL COUNTY.