896 A.2d 1093

**Randy Paul BROWN, Jr.**

v.

**STATE of Maryland.**

No. 2106, Sept. Term, 2004.

*Court of Special Appeals of Maryland.*

April 18, 2006.

■■■■■■■■

402

Brian M. Saccenti & Joy A. Richardson, Student (Nancy S. Forester, Public Defender on the brief), Baltimore, for Appellant.

Devy P. Russell (J. Joseph Curran, Jr., Atty. General on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., JAMES R. EYLER and KENNEY, JJ.

MURPHY, C.J.

This appeal from the Circuit Court for Anne Arundel County requires that we determine whether that court erred in refusing to suppress incriminating evidence that resulted from an encounter between (1) law enforcement officers conducting a search of a residence under the authority of a search warrant, and (2) a person who knocked at the front door of the residence while the officers were still inside. On the basis of "an agreed statement of facts," Randy Paul Brown, Jr., appellant, was convicted of possession of marijuana with intent to distribute. Appellant concedes that the State's evidence was sufficient to establish that he committed this offense, but he argues that this Court must reverse his conviction on the ground that

> THE [HONORABLE DAVID S. BRUCE, WHO PRESIDED AT THE HEARING ON APPELLANT'S MOTION FOR SUPPRESSION OF EVIDENCE] ERRED WHEN [HE] DENIED MR. BROWN'S MOTION TO SUPPRESS EVIDENCE BECAUSE THERE WAS NO PROBABLE CAUSE OR REASONABLE SUSPICION TO JUSTIFY THE INITIAL SEIZURE IN VIOLATION OF HIS FOURTH AMENDMENT RIGHTS.

For the reasons that follow, we conclude that, although a person who knocks on the door of the residence being searched may *not* be frisked (or searched) pursuant to a procedure under which "everybody who shows up gets frisked (or searched)," that person may be (1) ushered inside the residence and detained there for a reasonable period of time, and (2) subjected to a *Terry* frisk,[1] provided that the law

---

1. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that the Fourth Amendment's reasonableness standard applies to both the forcible "stop" of a suspicious person and the "frisk" of that person. Forcible stops based upon an officer's suspicion have become known as *Terry* stops. "While there undoubtedly is some risk to the police in every confrontation, *Terry* has

enforcement officers have "reasonable articulable suspicion" for their decision to conduct the frisk. Applying these conclusions to Judge Bruce's non-clearly erroneous findings of fact in the case at bar,[2] we shall affirm the judgment of the circuit court.

## Factual Background

Late on the evening of December 4, 2003, Anne Arundel County police officers executed a search warrant at the premises of 6415 Cedar Furnace Circle in Glen Burnie, Maryland. About 1:00 a.m., appellant walked up to the premises and knocked on the front door. At this point (in the words of appellant's brief):

> [T]he police were in the process of collecting evidence and recording it for the evidence inventory and transporting people to the police station. Only one or two suspects

---

never been thought to authorize a protective frisk on the occasion of every authorized stop." *Simpler v. State*, 318 Md. 311, 321, 568 A.2d 22 (1990). The "frisk" or "patting down" the exterior of the clothing surface of the person who has been stopped has become known as a *Terry* frisk, which requires reasonable articulable suspicion that the suspect may be armed. *Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). For a thorough analysis of "stop and frisk" issues, see Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* (1983), §§ 33.0–33.8.

**2.** Our review of the record includes (1) an examination of the trial judge's actual factual findings, because "[t]he actual findings of fact made by the [trial] judge, unless clearly erroneous, 'trump' the version most favorable to the prevailing party to the extent to which they might be in conflict." *Charity v. State*, 132 Md.App. 598, 606, 753 A.2d 556 (2000), and (2) an examination of the evidence presented, because "[i]n determining whether the evidence was sufficient, as a matter of law, … the appellate court will accept that version of the evidence most favorable to the prevailing party … [and] will perform the familiar function of deciding whether, as a matter of law, a *prima facie* case was established that could have supported the ruling." *Morris v. State*, 153 Md.App. 480, 489–90, 837 A.2d 248 (2003). The appellate court, however, "in assessing whether the police conduct in this case was reasonable under the Fourth Amendment, [makes its] own independent constitutional appraisal." *McMillian v. State*, 325 Md. 272, 281, 600 A.2d 430 (1992).

remained in the house. They had been handcuffed and were sitting on a couch in the living room....

Detective [Daniel] Devoe opened the door and took Mr. Brown by the arm. He asked Mr. Brown if he had any weapons or drugs on his person. Mr. Brown replied that he had a "quarter pound in his waist." Detective Devoe believed that the suʋ.tance Mr. Brown was referring to was marijuana. The bag was removed from Mr. Brown's waist and he was escorted into the kitchen and placed into handcuffs.

Detective Devoe and Detective Clark [who had been "monitoring the exterior of the residence," and who had "transmitted a radio message ... that a white male was approaching the residence,"] then went to the car that Mr. Brown had exited, which was parked near the front of the residence.... [A search of that vehicle turned up] various items of contraband ... including a black book bag ... which contained contraband, [and which appellant admitted] belonged to him.

During the suppression hearing, appellant established that (1) his name was not mentioned in the application for the search warrant, and (2) he did not live at the premises described in the search warrant. At the conclusion of the hearing, after hearing argument of counsel, Judge Bruce denied appellant's motion for suppression in an oral opinion that included the following findings and conclusions:

I do agree with [appellant] that ... he had no choice but to come into the house one way or another.

On the other hand, I do agree with [the prosecutor's argument] that at that point the police were justified in escorting him into the house whether he wanted to or not given the fact that he had just come up to the home where the search warrant was ongoing.

\* \* \*

The [constitutional issue] turns on whether or not [appellant] voluntarily told them as an impulse at the time that he

was ushered into the house and disclosed to them that I ...
do have drugs[, but] no weapons[.]

\* \* \*

... I disagree with [defense counsel] to the extent that
they had to ask him first and politely well why are you
coming here tonight in the middle of an executed search
warrant.

When they have many officers involved, they have [to] be
concerned about their own safety, not to mention the safety
of people that are in the premises. They have got people
lined up on the couch that are apparently in handcuffs.

And I think skipping the formalities of asking why you
are here I think was probably justified under the circum-
stances of the ongoing warrant. And to [ask] do you have
any weapons or drugs on you I don't think was inappropri-
ate.

As stated above, appellant was convicted on an agreed
statement of facts, and this appeal followed.

## I.

Appellant argues that, because Detective Clark could have
prevented him from reaching the front door and/or Detective
Devoe could have prevented him from entering the residence,
(1) appellant's Fourth Amendment protection against unrea-
sonable searches and seizures was violated when he was
forced to enter the residence, and (2) the "fruit of the poison-
ous tree" doctrine required suppression of the contraband
seized as a result of appellant's answer to the question of
whether he was in possession of weapons or drugs. In
support of this argument, appellant calls our attention to
*People v. Gallant,* 225 Cal.App.3d 200, 275 Cal.Rptr. 50 (1990),
in which the California intermediate appellate court reversed
the conviction of one William Gallant, whose person and
automobile were ultimately searched after he knocked on the
front door of a residence being searched "[e]arly on a Septem-
ber evening." Noting that "[t]here was nothing in the manner

of [his] approach to the door which made the police suspect him of any criminal conduct," the *Gallant* Court stated:

> The law does not permit a person to be detained unless the police have articulable facts making it objectively reasonable to suspect that particular person of criminal activity. From the fact that drugs in a saleable quantity have been found in a house, police may reasonably assume that *some* people come to that house to either deliver or buy drugs. However, a police officer may *not* reasonably conclude from that same fact that *everyone* approaching that house is involved in the drug trade. In the absence of evidence of their particular involvement in the illegal activity, friends, family, and the Fuller brush man should be free to knock on the door without being ordered at gunpoint and frisked.

*Id.* at 208, 275 Cal.Rptr. 50.

■ Our holding in the case at bar is entirely consistent with *Gallant*,[3] as well as with *Cotton v. State*, 386 Md. 249, 258–59, 872 A.2d 87 (2005), in which the Court of Appeals stated:

> [I]n executing a search warrant ... for a premises ... where the police are likely to encounter people who may well be dangerous, they are entitled, for their own safety and that of other persons, to take command of the situation and, except for persons who clearly are unconnected with any criminal activity and who clearly present no potential danger, essentially immobilize everyone until, acting with reasonable expedition, they know what they are confronting.... It would be decidedly *unreasonable* to expect the police simply to give a friendly greeting to the folks there and proceed to search the house without another thought as to who those people are or what they may do.

---

**3.** Subsequent decisions of the California appellate courts involving persons who arrive at a premises being searched have held *Gallant* to be distinguishable on its facts. *See, e.g.,· People v. Glaser*, 11 Cal.4th 354, 45 Cal.Rptr.2d 425, 902 P.2d 729 (Cal.1995), in which the California Supreme Court reinstated a judgment of conviction that was based upon evidence seized pursuant to a *Terry* frisk of a person entering a residence being searched.

We are persuaded that, in the case at bar, it would be unrealistic to conclude that appellant's 1:00 a.m. arrival at the residence (1) was *clearly* unconnected with the criminal activity, and/or (2) *clearly* presented no potential danger to the officers involved in the post-execution procedures related to the seizure of contraband from the premises described in the warrant.

As to the argument that the police should have simply sent appellant on his way, the *Cotton* Court quoted with approval the following portion of *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), in which the United States Supreme Court stated:

> A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But "[t]he fact that the protection of the public might in the abstract, have been accomplished by 'less intrusive' means does not, itself, render the search unreasonable"... The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it.

*Cotton,* 386 Md. at 259–60, 872 A.2d 87 (Citations omitted). We therefore reject appellant's argument that the Fourth Amendment was offended because he was ushered into the residence rather than turned away at the front door.

Appellant also argues that he is entitled to suppression of the contraband seized from his person on the ground that he was not advised of his *Miranda* rights prior to being asked whether he was in possession of weapons or drugs.[4] We conclude, however, that there are two reasons why the deriva-

---

4. We recognize that the fruit of the poisonous tree doctrine would operate to exclude appellant's statement if appellant's Fourth Amendment rights were violated when he was ushered into the residence. *Brown v. State,* 124 Md.App. 183, 197–98, 720 A.2d 1270 (1998). Because we have rejected appellant's argument that the Fourth Amendment was offended, however, the fruit of the poisonous tree doctrine does not apply to appellant's statement.

tive evidence rule does not entitle appellant to suppression of the contraband seized from his person.

First, "persons temporarily detained pursuant to [*Terry* stops and ordinary traffic] stops are not 'in custody' for purposes of *Miranda*." *Berkemer v. McCarty,* 468 U.S. 420, 441, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Provided that the *Terry* stop is proper, which is the situation in the case at bar, the officer who questions the person who has been detained is not required to recite the *Miranda* warnings before asking "a moderate number of questions to determine [the detained person's] identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* Appellant was therefore not entitled to be advised of his *Miranda* rights before he was asked whether he had any weapons or drugs on his person.

Second, assuming that appellant should have been advised of his *Miranda* rights before he was asked whether he had weapons or drugs on his person, it is well settled that the derivative evidence rule "does not follow from a 'mere *Miranda*' violation ... but applies only to confessions *involuntarily* obtained as by improper inducements or coercion." *Fried v. State,* 42 Md.App. 643, 646, 402 A.2d 101 (1979). *See also Raras v. State,* 140 Md.App. 132, 166, 780 A.2d 322 (2001), and *In re Owen F.,* 70 Md.App. 678, 687, 523 A.2d 627 (1987). While the derivative evidence rule is applicable to a *coerced* confession (whether or not the person being interrogated was given the *Miranda* warnings), the question asked of appellant was not preceded by any promises, threats, or inducements. We therefore hold that, even if appellant should not have been asked any questions before he was advised of his *Miranda* rights, he is not entitled to suppression of the tangible evidence derived from his otherwise voluntary statement.

## II.

In the alternative, appellant argues that this Court must vacate his conviction and remand for a new suppression hearing on the ground that

[JUDGE BRUCE] ERRED WHEN [HE] OVERRULED MR. BROWN'S OBJECTION TO A DETECTIVE'S OPINION THAT MR. BROWN CAME TO THE RESIDENCE TO CONDUCT A DRUG TRANSACTION.

 This argument is controlled by *Matoumba v. State,* 390 Md. 544, 890 A.2d 288 (2006), in which the Court of Appeals recently answered "no" to the question of "whether a police officer, testifying at a suppression hearing, is required to be qualified as an expert witness regarding facts that gave rise to a reasonable suspicion justifying a stop and frisk of a suspect." While we agree entirely with the holding in that case, even if we would have reached a contrary conclusion, this Court is required to apply *Matoumba* to the case at bar.

 It is for the law enforcement officer who conducted the stop and frisk to explain why he or she decided to do so, and it is for the judicial officer to (1) determine as a matter of fact whether that explanation is truthful, and (2) determine as a matter of law whether the facts found to be true satisfy the "reasonable articulable suspicion" requirement. We therefore conclude that appellant is not entitled to a remand on the ground that Detective Devoe lacked the qualifications to explain why he took the action about which appellant complains.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**