910 A.2d 571

**Michael E. BROWN**

v.

**STATE of Maryland.**

**No. 2273 Sept. Term 2005.**

Court of Special Appeals of Maryland.

Nov. 1, 2006.

490

494

496

**498**

C. William Michaels, Baltimore, David M. Williams, Chestertown, for appellant.

Brian S. Kleinbord (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: HOLLANDER, EYLER, DEBORAH S., BARBERA, JJ.

BARBERA, J.

This appeal presents us with the opportunity to decide, among other matters, the constitutional effect of the evidentiary "presumptions" concerning blood alcohol concentration, set forth in Maryland Code (2002 Repl.Vol., 2004 Cum Supp.), § 10–307 of the Courts and Judicial Proceedings Article ("CJ"). CJ § 10–307 provides, *inter alia*, that a specified level of alcohol concentration in an accused's breath or blood "shall be prima facie evidence" that the accused was driving while impaired by alcohol or under the influence of alcohol. The question we decide is whether that evidentiary device constitutes a mandatory presumption that violates the accused's due process right to be convicted only upon the State's proof of every element of the offense beyond a reasonable doubt, or whether, instead, the device is merely a permissive inference that allows, but does not require, the trier of fact to find the existence of an element that the State must prove. We shall hold that CJ § 10–307 sets forth a permissive inference and therefore does not offend due process.

Appellant Michael E. Brown stands convicted of driving while under the influence of alcohol, in violation of Maryland Code (1977, 2002 Repl.Vol., 2004 Cum.Supp.), § 21–902(a)(1) of the Transportation Article ("Transp.").[1] He presents eight questions for our consideration, which we have consolidated and reordered:

I. Do the evidentiary presumptions set forth in CJ § 10–307 comport with due process?

II. Is CJ § 10–303(a)(3), which permits the use of a breath test within a certain time frame after being "apprehended," unconstitutionally vague?

III. Did the trial court correctly conclude that the police officer performed a lawful traffic stop of Mr. Brown?

IV. Did the trial court correctly conclude that the field sobriety tests conducted by the police officer comported with the Fourth Amendment and Article 26 of the Maryland Declaration of Rights?

V. Was the police officer who administered the field sobriety tests required to inform Mr. Brown of his *Miranda* rights under the Fifth Amendment and Article 22 of the Maryland Declaration of Rights?

For the reasons that follow, we affirm the judgment.

## FACTS AND PROCEEDINGS

On the morning of May 15, 2005, at approximately 2:20 a.m., a Jeep Grand Cherokee collided with the rear of a vehicle that was stopped at a red traffic signal in a northbound lane at the intersection of 48th Street and Coastal Highway, in Ocean City, Maryland. Also stopped at the intersection, but in a

---

1. Mr. Brown was also convicted of driving while under the influence of alcohol per se, Transp. § 21–902(a)(2), and driving while impaired by alcohol, Transp. § 21–902(b). The court merged those two convictions into the conviction of driving under the influence of alcohol and imposed a sentence on that offense only.

Hereinafter, all citations to the Transportation Article are to the 2004 version of the Code, which was in effect at the time of the charged offenses.

southbound lane of Coastal Highway, was a marked police vehicle in which Officer Douglas Smith, a member of the traffic safety unit of the Ocean City Police Department, and Officer Dagstani were riding.

Officer Smith, who was driving the police vehicle, saw the collision and heard it cause a "loud" noise. He watched the drivers of the two vehicles leave their vehicles and speak briefly, then return to their vehicles when the light turned green and continue north on Coastal Highway.

Officer Smith made a U-turn and followed the two vehicles as they headed north. The Grand Cherokee turned east on 51st Street, while the other vehicle continued northbound. Officer Smith immediately activated his emergency lights and stopped the other vehicle at 52nd Street and Coastal Highway. Officer Smith left Officer Dagstani to speak with the driver of that vehicle. Officer Smith then turned off his emergency lights and drove back to 51st Street, where he found the Grand Cherokee parked with the engine still running.

As Officer Smith pulled behind the Grand Cherokee, the driver, Mr. Brown, turned off its engine. Officer Smith got out of his vehicle and approached the Grand Cherokee, asked Mr. Brown for his license and registration, and began questioning him about the collision. At that time, Officer Smith noted the "strong odor of an alcoholic beverage on [Mr. Brown's] breath and person," and saw that his "eyes were glassy and bloodshot." Evidently, at some point during that exchange, Mr. Brown handed Officer Smith his identification card, but not the vehicle's registration. When asked again for the registration, Mr. Brown handed Officer Smith his insurance card. Officer Smith returned the card to Mr. Brown and again asked him for the registration card. Officer Smith noticed that, as Mr. Brown was "flipping through papers, he had passed over his registration card a couple times."

Sometime during the stop (it is not clear from the record precisely when), Officer Smith attempted to run a license check but received no response from the Delaware Motor Vehicle Administration. He asked Mr. Brown the status of

his license and Mr. Brown stated that "he had lost his license for a DWI" two years prior. Also sometime during the stop, Officer Dagstani radioed Officer Smith to advise that the driver of the other vehicle did not wish to file an accident report.

Officer Smith asked Mr. Brown to exit the vehicle. Mr. Brown "staggered out of the vehicle" whereupon Officer Smith asked him about his consumption of alcohol during that evening. He responded that "he had two mixed alcoholic beverages while at Seacrets," a bar located at 49th Street in Ocean City. Mr. Brown told Officer Smith that he had gone to Seacrets at 10:30 p.m. and had his last drink at 1:00 a.m.

Based upon his observations, Officer Smith administered several field sobriety tests. He asked Mr. Brown to count backward from seventy-five to fifty-seven and to recite the alphabet from "D to T." Officer Smith noted that Mr. Brown's speech was slurred as he performed the latter test. Officer Smith then administered the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test. Officer Smith found that Mr. Brown displayed a "lack of smooth pursuit in both his left and right eye," was unable to maintain heel-to-toe position, and was unable to follow all of the instructions.

Officer Smith then placed Mr. Brown under arrest for driving under the influence of alcohol. He was transported to the police station on 65th Street and Coastal Highway, where he was advised of his chemical test rights under form DR–15.[2] He agreed to take a breathalyzer test, the results of which showed his blood alcohol concentration ("BAC") to be 0.18 at the time of testing. The record does not reflect when the test was conducted.

Before trial, Mr. Brown filed a motion to suppress the evidence that the police obtained as a result of the stop. He argued that there were no articulable facts to support the

---

**2.** DR–15 is a standard form that explains a driver's rights and obligations under Maryland's "implied consent" law, Transp. § 16.205.1.

stop; the field sobriety tests were unlawful because (1) the officer did not have probable cause to believe that he had operated the motor vehicle while under the influence or impaired by alcohol and (2) he was not advised of and did not waive his *Miranda*[3] rights; and his arrest was not supported by probable cause.[4]

Because the case proceeded as a bench trial, the court took evidence on the motion to suppress during the State's case in chief. Upon hearing Officer Smith's testimony, the substance of which we have recounted above, the court heard Mr. Brown's argument on the motion and denied it. The court ruled that the initial stop was supported not merely by reasonable suspicion but by full probable cause that Mr. Brown had committed one or more traffic offenses. The court ruled, in pertinent part:

> Well, there's more than an abundance of probable cause for him to stop this vehicle. The officer saw the accident occur. Whether the other person that was involved, the other—the other person in the other vehicle that was involved wanted to pursue it or not civilly has no bearing whatsoever. It could have some bearing, but the fact that he didn't wouldn't preclude the officer from stopping the vehicle. He saw the accident happen. He certainly would have charged him with numerous charges including negligent driving, failure to reduce speed to avoid a collision. So he, certainly on those grounds, had the reason to approach him.
>
> And the officer, testified that he had his lights on. The—your client pulled off the highway onto a side street once the officer put his lights on. And he'd just had an accident at

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. At trial, Mr. Brown added the argument that he was entitled to suppression of the results of the breathalyzer test on the theory that the evidence was the "poisoned fruit" of the unlawful stop and arrest. *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

the time that the bars are closing, so he was concerned about whether in fact he'd had too much to drink. So there's certainly probable cause based on those facts also.

The court also found that "there was more than sufficient probable cause for . . . the officer to ask him to do the [field sobriety] tests, and upon his performance on the tests, there was probable cause to arrest." Finally, with respect to Mr. Brown's claim that *Miranda* warnings were required to be given and the rights thereunder waived before the field sobriety tests could be conducted, the court found that Officer Smith was "performing a traffic investigation" and "there's an abundance of authority that he does have the right to ask him questions without *Miranda* warnings."

Also before trial, Mr. Brown filed a "Motion in Limine to Preclude the Government From Relying on Unconstitutional Evidentiary Presumption Contained in Courts and Judicial Proceedings Article § 10–307." He argued that the statute allowed the State to rely upon evidentiary presumptions that relieved the State of its burden to prove every element of the offense beyond a reasonable doubt, in violation of due process. He also challenged CJ § 10–303(a)(2), which provides that, "[f]or the purpose of a test for determining alcohol concentration, the specimen of breath or blood *shall be taken within 2 hours after the person accused is apprehended.*" (Emphasis added). He argues that the italicized portion is unconstitutionally vague.

At trial the State sought to elicit evidence concerning the breathalyzer test. Mr. Brown objected and asked the court to rule on the motion *in limine.* The court asked defense counsel the grounds for the motion, to which he initially replied, "well, for the reasons [ ] stated" in the written motion. Counsel then restated the due process argument concerning CJ § 10–307, but he made no mention of the vagueness challenge to CJ § 10–303.

The court overruled Mr. Brown's objection and denied the motion without comment. The State then called Officer Green, a certified intoximeter operator with the Ocean City

Police Department, who testified concerning his administration of the breathalyzer test to Mr. Brown. Through Officer Green, the State offered into evidence the written results of the test, showing that Mr. Brown's blood alcohol concentration at the time of testing was 0.18.

The court found Mr. Brown guilty of driving under the influence of alcohol, driving under the influence of alcohol per se, and driving while impaired and proceeded immediately to sentencing. The court merged the latter two convictions into the former, and sentenced Mr. Brown to one year of incarceration, all but 60 days suspended, followed by two years of supervised probation. The court also imposed a fine of $500.

This appeal followed.

## DISCUSSION

### I. and II.

### The Constitutional Challenges to
### CJ §§ 10–303 and 10–307

Mr. Brown mounts constitutional attacks upon CJ § 10–303(a)(2) and CJ § 10–307, arguing that § 10–303(a)(2) is unconstitutionally vague, and that § 10–307 permits the State to rely upon evidentiary presumptions that relieve the State of its burden of proof. The State responds that Mr. Brown has preserved for our review only the second of these challenges and both challenges fail on their merits.

Before we address the parties' contentions we recognize several principles relevant to consideration of any challenge to the constitutionality of a statute. First, a statute is presumed to be valid and the courts "are reluctant to find a statute unconstitutional if, 'by any construction, it can be sustained.'" *Galloway v. State,* 365 Md. 599, 610–11, 781 A.2d 851 (2001) *cert. denied,* 535 U.S. 990, 122 S.Ct. 1547, 152 L.Ed.2d 472 (2002) (citations omitted). Stated differently, "if a statute is susceptible of one construction that is constitutional and one that is unconstitutional, the statute should be construed as constitutional." *State v. Smith,* 374 Md. 527, 565,

823 A.2d 664 (2003). Second, "if ... a statute violates a 'mandatory provision' of the Constitution, we are required to declare such an act unconstitutional and void." *Galloway*, 365 Md. at 611, 781 A.2d 851. Therefore, if a statute is void for vagueness or otherwise offends due process, "then the statute is unconstitutional." *Id.* Third, "[T]he party attacking the statute has the burden of establishing its unconstitutionality." *Id.* With those principles in mind, we turn to the parties' arguments, beginning with Mr. Brown's challenge to CJ § 10–307.

Mr. Brown argues that CJ § 10–307 establishes mandatory presumptions that violate the Due Process Clause of the Fourteenth Amendment.[5] Section 10–307 is entitled "Results of Analysis and Presumptions" and provides:

(a) *In general.*—(1) In any criminal, juvenile, or civil proceeding in which a person is alleged to have committed an act that would constitute a violation of ... § 21–902 of the Transportation Article, the amount of alcohol in the person's breath or blood shown by analysis as provided in this subtitle is admissible in evidence and has the effect set forth in subsections (b) through (g) of this section....

(b) *Alcohol concentration of 0.05 or less.*—If at the time of testing a person has an alcohol concentration of 0.05 or less, as determined by an analysis of the person's blood or breath, it shall be presumed that the person was not under the influence of alcohol and that the person was not driving while impaired by alcohol.

(c) *Alcohol concentration of more than 0.05 but less than .07*—If at the time of testing a person has an alcohol concentration of more than 0.05 but less than 0.07, as determined by an analysis of the person's blood or breath, this fact may not give rise to any presumption that the person was or was not under the influence of alcohol or that

---

5. We shall address later in this opinion what appears to be a separate challenge by Mr. Brown to the constitutionality of the offense of "driving while under the influence of alcohol per se," Transp. § 21–902(a)(2).

the person was or was not driving while impaired by alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not driving while under the influence of alcohol or driving while impaired by alcohol.

(d) *Prima facie evidence of impairment.*—If at the time of testing a person has an alcohol concentration of at least 0.07 but less than 0.08, as determined by an analysis of the person's blood or breath, it shall be prima facie evidence that the person was driving while impaired by alcohol.

(e) *Prima facie evidence of alcohol in blood.*—If at the time of testing a person has an alcohol concentration of 0.02 or more, as determined by an analysis of the person's blood or breath, it shall be prima facie evidence that the person was driving with alcohol in the person's blood.

(f) *Prima facie evidence of violation of § 16–113 of the Transportation Article.*—If at the time of testing a person has an alcohol concentration of 0.02 or more, as determined by an analysis of the person's blood or breath, it shall be prima facie evidence that the person was driving in violation of an alcohol restriction under § 16–113 of the Transportation Article.

(g) *Under the influence of alcohol per se.*—If at the time of testing a person has an alcohol concentration of 0.08 or more, as determined by an analysis of the person's blood or breath, the person shall be considered under the influence of alcohol per se as defined in § 11–127.1 of the Transportation Article.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove beyond a reasonable doubt every element necessary to establish the crime charged. *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (stating that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). The State is

not permitted to shift the burden of proof to the defendant of any element of an offense, but the State may use inferences and presumptions that allow the trier of fact to determine the existence of an element of the crime from the existence of one or more "evidentiary" or "basic" facts. *County Court of Ulster County v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

The permissive inference or presumption is a common evidentiary device that allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecution of the basic fact, and that places no burden of any kind on the defendant. *Id.* at 157, 99 S.Ct. 2213. "In that situation the basic fact may constitute prima facie evidence of the elemental fact." *Id.* Because a permissive presumption allows the trier of fact to accept or reject the inference, due process is offended only when, "under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Id.; see also Francis,* 471 U.S. at 314–15, 105 S.Ct. 1965 (stating that a permissive inference violates the Due Process Clause only "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury").

A mandatory presumption, by contrast, instructs the finder of fact that it must infer the presumed fact if the State proves certain predicate facts. *Francis,* 471 U.S. at 314, 105 S.Ct. 1965. A mandatory presumption may be either conclusive or rebuttable. *Sandstrom v. Montana,* 442 U.S. 510, 517–18, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). A mandatory conclusive presumption "removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption." *Francis,* 471 U.S. at 314 n. 2, 105 S.Ct. 1965. A mandatory rebuttable presumption does not remove the presumed element from the case but nevertheless requires the trier of fact to find the presumed element unless the defendant persuades the trier of fact that such a finding is unwarranted. *Id.* If such a presumption relieves the State of the burden of persuasion on an element of the offense, it

violates due process. *Id.* at 314, 105 S.Ct. 1965. The *Allen* Court has said the following concerning mandatory presumptions:

A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the "no reasonable doubt" burden but also the placement of that burden; it tells the trier that he or she *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. In this situation, the Court has generally examined the presumption on its face to determine the extent to which the basic and elemental facts coincide. To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases.

*Allen*, 442 U.S. at 157–59, 99 S.Ct. 2213 (citations and footnotes omitted).

Mr. Brown argues that the evidentiary presumptions in CJ § 10–307 are impermissible mandatory presumptions and therefore, the statute is unconstitutional on its face. One difficulty he faces in advancing a facial challenge to CJ § 10–307 is that the challenge runs afoul of the principle that "[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Allen*, 442 U.S. at 154–55, 99 S.Ct. 2213. Therefore, "[a]s a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." *Id.* at 155, 99 S.Ct. 2213 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

Mr. Brown's case was tried to the court; consequently, we do not have before us a case like *Allen, Sandstrom,* or

*Francis,* in each of which the issue to be decided was whether a jury instruction based on an evidentiary presumption was couched in language that created an impermissible mandatory presumption. The Supreme Court made clear in each of those cases that the way the jury is instructed concerning a statutory evidentiary presumption is often dispositive of the constitutional challenge. *See Allen,* 442 U.S. at 162–63, 99 S.Ct. 2213; *Sandstrom,* 442 U.S. at 524, 99 S.Ct. 2450; *Francis,* 471 U.S. at 317–18, 105 S.Ct. 1965.

The Supreme Court said in *Allen,* for example, that, "[i]n deciding what type of inference or presumption is involved in a case, the jury instructions will generally be controlling, although their interpretation may require recourse to the statute involved and the cases decided under it." 442 U.S. at 158 n. 16, 99 S.Ct. 2213. The *Allen* Court criticized the United States Court of Appeals for the Second Circuit because that court analyzed the facial constitutionality of New York's statutory presumption that presence of a firearm in an automobile is evidence of its illegal possession by all occupants, without examining how the jury was instructed on the presumption. *Id.* at 155–56, 160, 99 S.Ct. 2213. The *Allen* Court looked to the jury instruction that was given concerning the statutory presumption and concluded that it was framed in such a way as not to force the jury to accept the presumption. *Id.* at 160–61, 99 S.Ct. 2213. The Court further noted that the presumption was "entirely rational," given all the circumstances of the case, and therefore, as applied to the accused in that case, the presumption did not offend due process. *Id.* at 164–65, 99 S.Ct. 2213.

 We have said that Mr. Brown was not tried by a jury, but by the court. It is a rule of appellate review that a trial judge is presumed to know the law and apply it properly. *State v. Chaney,* 375 Md. 168, 180, 825 A.2d 452 (2003). We therefore presume that the trial judge in this case knew that he could, but was not required to, infer from the breathalyzer results that Mr. Brown was under the influence of alcohol at the time he was observed driving the vehicle. Indeed, we

know from the judge's ruling that he did not find Mr. Brown guilty of the alcohol-related driving offenses based solely on the breathalyzer results. The judge ruled that he found Mr. Brown guilty of driving under the influence of alcohol based on both his performance on the field sobriety tests and the results of the breathalyzer.

Certainly, then, as applied to Mr. Brown, CJ § 10–307 presents no due process concerns. The test results showed that, at the time of testing, Mr. Brown had a BAC of 0.18. The judge could rationally infer from that fact, and the other facts before him, that Mr. Brown was driving while under the influence of alcohol at the time alleged. Mr. Brown cannot successfully argue, then, that the evidentiary "presumption" contained in CJ § 10–307(e) was applied against him in an unconstitutional manner. *See Allen,* 442 U.S. at 163, 99 S.Ct. 2213.

■■■ Mr. Brown, of course, asks us to review CJ § 10–307 for facial validity. We shall put aside the concerns we have about his standing to bring that challenge, because the State never asserted lack of standing. We shall assume for purposes of this opinion that Mr. Brown can properly challenge CJ § 10–307 on its face. The challenge fails, nevertheless.

We begin by noting that, although neither the Court of Appeals nor this Court has addressed this issue directly, we have commented in dicta that breathalyzer readings do not give rise to an irrebuttable presumption of intoxication. *See Cameron v. State,* 102 Md.App. 600, 611 n. 2, 650 A.2d 1376 (1994). And, we have described CJ § 10–307 as setting forth a statutory "inference" of driving while impaired or under the influence of alcohol. *Briscoe v. State,* 60 Md.App. 42, 45, 479 A.2d 1385, *cert. denied,* 302 Md. 8, 485 A.2d 249 (1984). Moreover, one federal district judge has concluded that the evidentiary presumptions found in CJ § 10–307 "permit the trier of fact to draw certain permissible inferences, which inferences the trier of fact may accept or reject; and otherwise give them whatever weight the trier of fact may deem appropriate along with all of the other evidence under construction." *United States v. Sauls,* 981 F.Supp. 909, 917–18

(D.Md.1997). Furthermore, two notable Maryland evidence commentators have described the statutory "presumptions" in CJ § 10–307 as merely giving rise to a permissive inference of driving under the influence of or impaired by alcohol.[6] *See* Joseph F. Murphy Jr., *Maryland Evidence Handbook*, § 404, at 120–21 (3d. ed.1999); Lynn McLain, *Maryland Evidence*, § 303:4 at 468 (2001).

CJ § 10–307 is constitutional by application of the principle that we avoid construing a statute as unconstitutional, "if, 'by any construction, it can be sustained.'" *Galloway*, 365 Md. at 611, 781 A.2d 851. The statute can be read to create a permissive inference that allows, but does not require, the trier of fact to find the defendant was driving under the influence of alcohol or impaired by alcohol. *See Sauls*, 981 F.Supp. at 917–18; *Briscoe*, 60 Md.App. at 45, 479 A.2d 1385. So construed, the statute does not shift to the defendant either a burden of production or of persuasion that the defendant was not driving while under the influence of alcohol or impaired by alcohol.

Indeed, the parties have not directed us to a single statute from another state that is similar to CJ § 10–307 and has been found to be unconstitutional on its face; certainly, we have found none. To the contrary, courts in our sister jurisdictions are in accord that similar statutory evidentiary presumptions concerning blood alcohol content are constitutional.

A Florida statute with language similar to CJ § 10–307 has been construed as a permissive inference. *See* Fla. Stat. § 316.1934(2) (1985). Much like CJ § 10–307(b) and (c), the Florida statute provides that a certain low BAC carries a presumption that the accused was *not* driving while under the influence of or impaired by alcohol, and a slightly higher BAC permits no presumption to be drawn one way or another. *See* § 316.1934(a), (b). By contrast, subsection (c) of the Florida

---

**6.** We note, too, that the Maryland Criminal Pattern Jury Instructions includes an instruction that casts the evidentiary presumptions in CJ § 10–307 as permissive inferences. *See* Maryland Criminal Pattern Jury Instructions (MPJI–Cr)4:10.4.

statute provides in pertinent part: "If there was at that time [of testing] 0.10 percent or more by weight of alcohol in the person's blood, that fact *shall be prima facie evidence* that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired." (Emphasis added.)

The Supreme Court of Florida held, in *State v. Rolle*, 560 So.2d 1154, 1157 (Fla.1990), that subsection (c) of the statute "creates a permissive inference not an unconstitutional presumption.... The legislature clearly understood the language of presumptions but chose to use different language in paragraph (c) ("shall be prima facie evidence")." The Florida court found the difference to be "crucial," and pointed out that the Supreme Court stated in *Allen* that, "with a permissive inference, 'the basic fact may constitute prima facie evidence of the elemental fact.'" *Id.* at 1156 (quoting *Allen*, 442 U.S. at 157, 99 S.Ct. 2213).

Other such statutes have received similar construction. *See, e.g., State v. Tiedemann*, 7 Haw.App. 631, 634, 790 P.2d 340 (1990) (holding that the trial court failed to instruct jurors that if they found defendant's BAC was .10 percent or more that "they were not required to, infer, therefrom that she was under the influence of intoxicating liquor when she was operating the van"); *Commonwealth v. Mahoney*, 400 Mass. 524, 532, 510 N.E.2d 759 (Mass.1987) (holding that the statute, which speaks in terms of a "presumption" that a defendant was under the influence of intoxicating liquor if the defendant's blood alcohol was .10 or greater, creates a "permissible inference" that the jury may employ in determining whether a defendant was intoxicated); *Commonwealth v. Murray*, 749 A.2d 513 (Pa.Super.2000)(en banc)(holding that the statutory presumption permits but "does not require the jury to conclude a defendant's BAC was above the legal limit"); *Eckman v. State*, 600 S.W.2d 937 (Tex.Cr.App.1980) (holding that the then-existing statutory presumption of intoxication was not mandatory and did not have to be accepted by the trier of fact); *State v. Ball*, 164 W.Va. 588, 589–90, 264 S.E.2d 844 (W.Va.1980) (holding that W. Va.Code, 17C–5A–5 (1968) is not

"unconstitutional because it provides that one tenth of one percent or more, by weight, of blood-alcohol shall be admitted as prima facie evidence of intoxication"); *State v. Raddeman,* 238 Wis.2d 628, 633, 635, 618 N.W.2d 258 (Wis.Ct.App.2000) (holding that Wis. Stat. § 885.235(1g)(c) is permissive, not mandatory and that "[t]he burden to prove each element of OWI [operating a motor vehicle while intoxicated] beyond a reasonable doubt remains with the State"); *see generally* D.E. Evins, Annotation, *Construction and Application of Statutes Creating Presumption or Other Inference of Intoxication from Specified Percentages of Alcohol Present in System,* 16 A.L.R.3d 748 (1967 & Supp.2006); V. Woerner, Annotated, *Validity of Legislation Creating Presumption of Intoxication or the Like from Presence of Specified Percentage of Alcohol in Blood,* 46 A.L.R.2d 1176 (1956 & Supp.2006).

When a constitutional problem does arise, it is due not to the statute itself, but to an improper jury instruction based on it. Indeed, just such a problem arose in *Briscoe, supra.* Although we characterized an earlier version of CJ § 10–307(e) as setting forth an inference of intoxication, we held that the trial court improperly instructed the jury by resort to the statutory language itself. *Briscoe,* 60 Md.App. at 45–47, 479 A.2d 1385. We said: "The statutory 'prima facie evidence' language is, of course, addressed to the trial judge. It tells him, in effect, that if certain evidence has been introduced . . . there is a case sufficient to go to the jury-a case in which the jury may but is not required to find intoxication." *Id.* at 46, 479 A.2d 1385. We recognized that the court's "[u]se of the 'prima facie evidence' wording of § 10–307(e) might have incorrectly persuaded the jury that this was a statutory presumption, thus requiring Briscoe to rebut it." *Id.* We held that the instruction created reversible error because " 'even if a jury *could* have ignored the presumption . . . we cannot be certain that this is what they *did* do.' " *Id.* at 46–47, 479 A.2d 1385 (quoting *Sandstrom,* 442 U.S. at 526, 99 S.Ct. 2450).

Other cases similarly hold. *Barnes v. People,* 735 P.2d 869, 873–74 (Colo.1987) (stating that the statute creates a constitutional permissive inference, but holding that the jury instruc-

tion created a mandatory presumption); *State v. Leverett,* 245 Mont. 124, 799 P.2d 119, 124–25 (1990)(noting that the determination of constitutionality will depend on "the particular language used to convey the presumption to the jury"); *State v. Dacey,* 138 Vt. 491, 418 A.2d 856, 859 (1980) (holding that the statute itself creates a permissive inference, shifts no burden to the defendant, and permits but does not compel a jury finding that defendant was under the influence of intoxicating liquor while operating a motor vehicle upon proof of .10 BAC; but further holding that the jury instruction in that case erroneously "misled the jury into believing that they had to find defendant to be under the influence if they believed the blood alcohol test evidence").

Much like the Florida legislature did when it enacted the statute we discussed above, the General Assembly, when it enacted CJ § 10–307, carefully chose when and when not to use presumption language within the statute, and opted to cast the provisions of concern to Mr. Brown, CJ §§ 10–307(d) and (e), in terms of prima facie evidence of driving while impaired or under the influence of alcohol. That phrasing is consistent with the statement in *Allen* that "the basic fact may constitute prima facie evidence of the elemental fact." 442 U.S. at 157, 99 S.Ct. 2213. We hold that Mr. Brown has not carried his burden of establishing that § 10–307 is unconstitutional either on its face or as applied to him.

### Transp. § 21–902(a)(2):

### Driving While Under the Influence of Alcohol Per Se

██ Mr. Brown also seems to mount a separate challenge to the constitutionality of Transp. § 21–902(a)(2), which states: "A person may not drive or attempt to drive any vehicle while the person is under the influence of alcohol per se." "Under the influence of alcohol per se" is defined as "having an alcohol concentration at the time of testing of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." Transp. § 11–127.1.[7]

---

7. Since the date at issue in this case, Transp. § 11–127.1 was recodified at Transp. § 11–174.1.

We understand Mr. Brown's contention to be that Transp. § 21–902(a)(2), like CJ § 10–307, creates an impermissible mandatory conclusive presumption that a driver who is operating a motor vehicle with a BAC of .08 or greater is driving while under the influence of alcohol. The State argues that Mr. Brown has not preserved that challenge to Transp. § 21–902(a)(2), because he did not argue the issue with sufficient specificity at trial. We shall assume that the argument is properly preserved for our review, and we reject it on its merits.

Transp. § 21–902(a)(2) does not contain an impermissible presumption. The Court of Appeals has made clear that Transp. § 21–902(a)(2) creates an offense separate from the offense of driving under the influence of alcohol. *Meanor v. State*, 364 Md. 511, 520–25, 774 A.2d 394 (2001). Unlike § 21–902(a)(1), which requires proof of driving (or attempting to drive) plus substantial impairment of normal coordination, § 21–902(a)(2) requires proof of driving (or attempting to drive) plus a BAC of 0.08 or greater. *See Meanor*, 364 Md. at 523–24, 774 A.2d 394.

By enacting Transp. § 21–902(a)(2), the General Assembly has not mandated that an ultimate fact be presumed from another fact; rather, it has simply made the judgment that people should not drive after consuming a significant amount of alcohol, even if some persons conceivably could drive safely with that amount of alcohol content in their blood. That legislative judgment is no different than other judgments the General Assembly makes in crafting its vehicular laws. For example, the legislature has enacted laws that prohibit driving in excess of identified speeds and mandate stopping at a red light or a stop sign, notwithstanding that, in a given circumstance (say, when there is no other vehicular or pedestrian traffic in the vicinity), safety concerns would not necessarily be at issue.

Furthermore, the General Assembly, by making a BAC of 0.08 or more an element of the offense, has placed upon the State the burden of proving that element. Although the State

invariably would seek to establish an accused's BAC by offering the results of a breath or blood test, conviction under § 21–902(a)(2) does not necessarily follow from the offer of that evidence. One court has described the burden of proof of the BAC element of a per se alcohol related driving offense as follows:

[T]he trier of fact must still be convinced beyond a reasonable doubt that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath, blood or urine. [And,] the [trier of fact] must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had [the statutorily defined] alcohol concentration in his body *at the time of the offense.*

*Forte v. Texas,* 707 S.W.2d 89, 94–95 (Tex.Cr.App.1986)(en banc).

Courts construing similar per se statutes have likewise rejected arguments like the one Mr. Brown advances. *See Welch v. City of Pratt, Kansas,* 214 F.3d 1219, 1225 (10th Cir.2000) (holding that the Kansas statutory proscription that "no person shall operate any vehicle while ... the alcohol concentration in the person's blood ... is [.08] or more ..." created a permissive presumption because it could not reasonably be understood to "require the jury to convict without considering whether petitioner was intoxicated while driving"); *Coxe v. State,* 281 A.2d 606 (Del.1971) (upholding per se offense which provided that person whose BAC was .10 or more within two hours of the alleged offense shall be guilty of driving under the influence of alcohol because it was a "legislative determination that such quantity of alcohol has sufficient adverse effect upon any person to make his driving a definite hazard to himself and others"); *State v. Rolle,* 560 So.2d at 1156 (noting that the statute allowing "proof of a blood alcohol level of .10 percent or higher to be substituted for proof of impairment" was not an unconstitutional presumption, but, rather, an alternate method of proving the offense); *Forte,* 707 S.W.2d at 94 (holding that the Texas per se statute does not create a mandatory conclusive presumption of intoxication but

is instead a method of "defining the crime differently" whereby the legislature "decided to avoid its previous use of a presumption [of intoxication] and, instead, made an alcohol concentration of 0.10% or more an *element* of the offense").

As our sister jurisdictions have done, we reject the suggestion that Transp. § 21–902(a)(2) embodies an unconstitutional mandatory presumption.

### The challenge to CJ § 10–303(a)(2)

Mr. Brown also raises a constitutional challenge to CJ § 10–303(a)(2). Section 10–303 provides in its entirety:

(a) *Alcohol concentration.*—(1) A specimen of breath or 1 specimen of blood may be taken for the purpose of a test for determining alcohol concentration. (2) For the purpose of a test for determining alcohol concentration, the specimen of breath or blood shall be taken within 2 hours after the person accused is apprehended.

(b) *Drug or controlled dangerous substance content.*—(1) Only 1 specimen of blood may be taken for the purpose of a test or tests for determining the drug or controlled dangerous substance of the person's blood. (2) For the purpose of a test or tests for determining drug or controlled dangerous substance content of the person's blood, the specimen of blood shall be taken within 4 hours after the person accused is apprehended.

Mr. Brown focuses his attack upon the term "apprehended" in (a)(2) and argues that, because the term is not sufficiently defined in the statute, that subsection is unconstitutionally vague. The State responds that the claim is not properly preserved for our review and that it fails on its merits, in any event.

We first address the State's contention that the argument is not preserved. Mr. Brown filed a pre-trial motion *in limine*, seeking to exclude the results of the breath test and raising both the due process challenge we have already addressed and a void-for-vagueness challenge. At trial, defense counsel objected to the admission into evidence of the results

of the breath test and sought a ruling on the motion *in limine.* When the judge asked him to state his grounds for the motion, counsel replied that he was relying on the arguments made in the motion. Counsel then elaborated on the argument concerning the evidentiary "presumptions," but did not mention the void-for-vagueness challenge. The court denied the motion and without further comment overruled Mr. Brown's objection to the admission into evidence of the breath test results.

We shall assume, for purposes of our discussion, that Mr. Brown's vagueness challenge is preserved for appellate review because he specifically identified and argued the grounds for that challenge in his written motion, and defense counsel explicitly referred at trial to that motion as setting forth all of the arguments concerning the admissibility of the breath test results. It bears repeating, however, that defense counsel has the obligation to ensure that all arguments have been properly preserved for appellate review by clearly and fully arguing them to the trial court. *See Reynolds v. State,* 327 Md. 494, 502, 610 A.2d 782 (1992).

We shall further assume, again for purposes of discussion only, that Mr. Brown has standing to challenge § 10–303(a)(2), as void for vagueness. We have already stated the rule that "[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Allen,* 442 U.S. at 154–55, 99 S.Ct. 2213 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

Mr. Brown does not argue that the police conducted the breathalyzer test more than two hours after his being "apprehended." Given that fact, it certainly could be argued that Mr. Brown does not have standing to raise a vagueness challenge. The State did not raise standing, however, so we shall consider the merits of Mr. Brown's argument.

Even so, we conclude that the argument has no merit. Mr. Brown argues that § 10–303(a)(2) is unconstitutionally vague

because the term "apprehended" is not sufficiently defined in the statute. We disagree.

 We begin by noting that, generally speaking, the void-for-vagueness doctrine calls upon the court to consider "two criteria or rationales":

The first rationale is the fair notice principle that "persons of ordinary intelligence and experience be afforded a reasonable opportunity to know what is prohibited, so that they may govern their behavior accordingly." The standard for determining whether a statute provides fair notice is "whether persons of common intelligence must necessarily guess at [the statute's] meaning." A statute is not vague under the fair notice principle if the meaning "of the words in controversy can be fairly ascertained by reference to judicial determination, the common law, dictionaries, treatises or even the words themselves, *if* they possess a common and generally accepted meaning.

The second criterion of the vagueness doctrine regards enforcement of the statute. This rationale exists "to ensure that criminal statutes provide 'legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws.' "

*Galloway*, 365 Md. at 615–16, 781 A.2d 851 (numerous citations omitted).

 A statute is not unconstitutionally vague simply because it permits "the exercise of some discretion on the part of law enforcement and judicial officials. It is only when a statute is so broad as to be susceptible to irrational and selective patterns of enforcement that it will be held unconstitutional under the second arm of the vagueness principle." *Bowers v. State*, 283 Md. 115, 122, 389 A.2d 341 (1978). "As a general rule, the application of the void-for-vagueness doctrine is based on the application of the statute to the 'facts at hand.' " *Galloway*, 365 Md. at 616, 781 A.2d 851 (quoting *Bowers*, 283 Md. at 122, 389 A.2d 341). Consequently, "it will usually be immaterial that the statute is of questionable

applicability in foreseeable marginal situations, if a contested provision clearly applies to the conduct of the defendant in a specific case." *Bowers,* 283 Md. at 122, 389 A.2d 341.[8]

Application of these principles makes clear why Mr. Brown's argument fails. First, it is far from clear that a void-for-vagueness challenge can ever be successfully asserted against a provision such as CJ § 10–303(a)(1). That provision, after all, does not purport to prohibit or require citizen conduct. Instead, it simply establishes the time frame within which a blood or breath test must be conducted in order to be admissible at trial. *See id.;* CJ § 10–309(a)(ii)(providing for the exclusion of test results that are "obtained contrary to the provisions of this subtitle"). Mr. Brown has cited no cases in which the doctrine is applied to statutes governing the admissibility of evidence, and we know of none.

Second, and in any event, a statute is not void for vagueness if "the meaning 'of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, *if* they possess a common and generally accepted meaning.' " *Galloway,* 365 Md. at 615, 781 A.2d 851. The Court of Appeals has already decided what the word "apprehended" means in CJ § 10–303(a)(2). *See Willis v. State,* 302 Md. 363, 488 A.2d 171 (1985). The Court concluded in *Willis* that the General Assembly intended for an apprehension to be the functional equivalent of a "stop or detention," and that "an accused is 'apprehended' when a police officer has reasonable grounds to believe that the person is or has been driving a motor vehicle while intoxicated or while under the influence of alcohol and the police officer reasonably acts upon that infor-

---

**8.** That rule notwithstanding, when a challenge is to a statute that encroaches on constitutional rights, particularly First Amendment guarantees of free speech and assembly, then a person charged with violating the statute is permitted "to challenge the validity of a statute even though the statute as applied *to the defendant is constitutional."* *Ayers v. State,* 335 Md. 602, 624–25, 645 A.2d 22 (1994), *cert. denied,* 513 U.S. 1130, 115 S.Ct. 942, 130 L.Ed.2d 886 (1995).

mation by stopping or detaining the person." *Id.* at 376, 488 A.2d 171.

Third, as we have mentioned, Mr. Brown does not argue that the police conducted the breathalyzer test more than two hours after his being "apprehended." CJ § 10–303(a)(2) is not vague when applied to the "facts at hand." *Galloway,* 365 Md. at 616, 781 A.2d 851 (quoting *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)). We reject his challenge that the statute is unconstitutionally vague.

## III., IV. and V.

### The Suppression Ruling

Mr. Brown argues that the court wrongly denied the motion to suppress the results of the field sobriety tests and the breathalyzer test that was conducted at the police station following his arrest. He presents three arguments in support of that contention: (1) the police officer did not lawfully stop his vehicle; (2) the field sobriety tests were a search that was not supported by probable cause; and (3) no *Miranda* warnings were administered prior to the field sobriety tests.

Before examining each of Mr. Brown's arguments, we say a word about the standard under which we review rulings on motions to suppress evidence. We rely solely on the record developed at the suppression hearing. *State v. Green,* 375 Md. 595, 607, 826 A.2d 486 (2003); *Smith v. State,* 161 Md.App. 461, 473, 870 A.2d 1228 (2005). "[W]e view the evidence and inferences that may be reasonably drawn therefrom in a light most favorable to the prevailing party on the motion," and we accept factual findings made by the motion court that are not clearly erroneous. *State v. Rucker,* 374 Md. 199, 207, 821 A.2d 439 (2003). Although we extend great deference to the motion court's findings of fact, such as determinations of witness credibility and the weight of the evidence, we make our own independent constitutional appraisal of the law as it applies to the facts of the case. *Cox v. State,* 161 Md.App. 654, 667–68, 871 A.2d 647 (2005).

■■■■■■■

## A. The Traffic Stop

■■■■■■ Mr. Brown argues that, when Officer Smith initiated the traffic stop, he did not possess the requisite reasonable suspicion that Mr. Brown had been or was engaged in any wrongdoing. He argues:

> Officer Smith decided to stop Appellant's vehicle after the collision occurred, not when it occurred. When Officer Smith did so, he had information that the driver of the other vehicle did not want to pursue any action or claim, and the collision thus caused little or no property damage to that vehicle and no injury whatsoever to the vehicle occupants. Even though the Court found that Officer Smith could have cited Appellant for not slowing down to avoid a collision or similar traffic offenses, there is no indication that Officer Smith had this in mind when the stop was made. Nor was any such citation issued, or accident report filed. Instead, Officer Smith was following his hunch that the Jeep Cherokee driver was under the influence of alcohol.

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). A traffic stop, even for a brief period of time, is a detention of the person that implicates the Fourth Amendment. *See United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Rowe v. State,* 363 Md. 424, 432, 769 A.2d 879 (2001). An officer may stop an automobile if he is able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Cartnail v. State,* 359 Md. 272, 284, 753 A.2d 519 (2000); *Muse v. State,* 146 Md.App. 395, 402, 807 A.2d 113 (2002). Reasonable suspicion is a less demanding standard than probable cause, yet "the Fourth Amendment requires at least a minimum level of objective justification for making the stop." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The police must be able to demonstrate more "than an 'inchoate and unparticularized' activity or 'hunch' of criminal activity." *Id.* at 123–24,

120 S.Ct. 673. Moreover, when, as in this case, the "officer observes the commission of a traffic violation, the *Terry* analysis would not come into play because that officer would have the requisite probable cause to stop the automobile and would not need to rely on *Terry* to justify his actions." *Muse,* 146 Md.App. at 403, 807 A.2d 113 (citing *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

We shall assume, solely for purposes of our analysis and because the State does not argue any differently, that Officer Smith seized Mr. Brown at the moment he approached Mr. Brown in his already stopped vehicle.[9] Officer Smith stopped Mr. Brown after witnessing him run his vehicle into the rear end of a car that was properly stopped at an intersection, making a "loud noise" in the process. We agree with the trial court that those facts gave Officer Smith not merely reasonable suspicion, but full probable cause to believe that Mr. Brown committed one or more traffic offenses, including negligent driving, failure to reduce speed to avoid a collision, or failure to stop at a red traffic signal. *See* Transp. §§§ 21–901.1(b), 21–801(b), 21–201(a)(1).

It is of no consequence that Officer Smith did not charge Mr. Brown with any of those offenses; neither is it relevant to

---

9. The State did not argue to the circuit court that Mr. Brown was not actually seized, for purposes of the Fourth Amendment, until sometime later in the encounter, say, when the officer "asked" Mr. Brown for his identification, or later, when he "asked" Mr. Brown to step out of the Grand Cherokee, or even later still, when the officer had Mr. Brown perform the field sobriety tests. *See Ferris v. State,* 355 Md. 356, 377, 735 A.2d 491 (1999)(discussing factors that are indicative of a seizure of the person). Indeed, neither Mr. Brown nor the State clearly identifies the precise moment when Officer Smith initiated the "stop" of Mr. Brown.

Because we hold that Officer Smith had full probable cause to believe that Mr. Brown had committed at least one traffic violation in his presence even before he approached Mr. Brown's vehicle, it is unnecessary that we identify with precision the moment when the gears of the Fourth Amendment became engaged. We remind counsel, however, that it is always good practice when litigating a Fourth Amendment claim to determine exactly when, if at all, the Fourth Amendment becomes applicable to a given police/citizen encounter.

the Fourth Amendment analysis that Officer Smith may have harbored a different subjective intention. *See Whren,* 517 U.S. at 814–15, 116 S.Ct. 1769 (the police officer's subjective intentions have no bearing on probable cause determination); *accord Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)(an arresting officer's state of mind is irrelevant to the existence of probable cause). Officer Smith lawfully stopped Mr. Brown.

## B. The Field Sobriety Tests

Mr. Brown next contends that, "[e]ven if Officer Smith's initial stop of [his] vehicle was permitted, there must have been an independent probable cause basis for him to require [his] to perform the field sobriety tests which are a Fourth Amendment 'search.' " Mr. Brown is right that field sobriety tests are searches for purposes of the Fourth Amendment. He is wrong that a police officer must have probable cause to believe that a driver is under the influence of alcohol before requiring the driver to perform such tests; rather, the police need only have reasonable suspicion that the driver is under the influence of alcohol.

Our recent decision of *Blasi v. State,* 167 Md.App. 483, 893 A.2d 1152, *cert. denied,* 393 Md. 245, 900 A.2d 751 (2006), resolved the matter. We held in that case "that although the administration of field sobriety tests by a police officer during a valid traffic stop constitutes a search within the meaning of the Fourth Amendment, the conduct of those tests is constitutionally permissible when the officer has reasonable articulable suspicion that the driver is under the influence of alcohol." *Id.* at 511, 893 A.2d 1152. Mr. Brown has given us no sound reason to revisit that holding.

Neither do we accept Mr. Brown's invitation to reach a different conclusion, by application of Article 26 of the Maryland Declaration of Rights. Indeed, the same invitation was made in *Blasi,* and we rejected it. *See id.* at 511 n. 12, 893 A.2d 1152.

Mr. Brown does not argue that Officer Smith did not have reasonable suspicion that he was under the influence of alcohol before conducting the field sobriety tests. Even so, there is no doubt that the officer had the requisite reasonable suspicion. Before conducting the tests, Officer Smith observed a "strong odor of alcoholic beverage" on Mr. Brown's breath and saw that his eyes were "glassy and bloodshot." *See Ferris v. State*, 355 Md. 356, 391, 735 A.2d 491 (1999) (holding that "bloodshot eyes, in conjunction with the odor of alcohol emanating from the person, would ordinarily provide police with reasonable suspicion that a driver was under the influence of alcohol"). Mr. Brown admitted to Officer Smith before the tests were administered that he had "two mixed drinks" at a local bar within several hours before the stop. And, Officer Smith already had noticed that Mr. Brown mistakenly "passed through his registration card several times while flipping through papers," and handed Officer Smith his insurance card instead of his registration card.

Because Officer Smith had reasonable suspicion that Mr. Brown was under the influence of alcohol, the officer was authorized under *Blasi* to conduct the field sobriety tests. Neither the Fourth Amendment nor Article 26 of the Maryland Declaration of Rights was violated.

### C. *Miranda* and Field Sobriety Tests

 Mr. Brown also argues that Officer Smith acted unlawfully by conducting the field sobriety tests without first administering the warnings outlined in *Miranda*. He insists that field sobriety tests (1) rise to the level of custodial interrogation implicating the Fifth Amendment and (2) are testimonial in nature.[10] We disagree with Mr. Brown's contention that the conduct of field sobriety tests constitutes

---

10. Mr. Brown also contends that his rights under Article 22 of the Maryland Declaration of Rights were violated. We decline to address this argument separately from our Fifth Amendment analysis because we have consistently construed Article 22 *in pari materia* with the Fifth Amendment. *See Wyatt v. State*, 149 Md.App. 554, 571, 817 A.2d 901 (2003).

custodial interrogation implicating the Fifth Amendment. Consequently, we need not and do not address whether any of the compelled tests is testimonial. *See McAvoy v. State of Maryland,* 314 Md. 509, 517, 551 A.2d 875 (1989).

In *Miranda v. Arizona,* the Supreme Court set forth prophylactic measures designed to advise the defendant of his right to remain silent in securing the Fifth Amendment privilege against compelled self-incrimination. 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* warnings, however, need only be administered if the defendant is in custody. *Id.* Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

Mr. Brown contends that he was in custody when Officer Smith administered the field sobriety tests because he was under the control and direction of the officer, and therefore not free to leave. The Court of Appeals, however, has held that a suspect who is briefly detained in order to perform field sobriety tests is not "in custody" for purposes of *Miranda. McAvoy,* 314 Md. at 516–17, 551 A.2d 875; *see also Berkemer v. McCarty,* 468 U.S. 420, 438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding that a suspect temporarily detained during a traffic stop is not in custody, as the "questioning incident to an ordinary traffic stop is quite different from a stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek"); *Brown v. State,* 168 Md.App. 400, 410, 896 A.2d 1093 (stating that during a proper *Terry* stop, the officer who questions the person who has been detained is not required to recite *Miranda* warnings before asking "a moderate number of questions to determine [the detained person's] identity and to try to obtain information confirming or dispelling the officer's suspicions"), *cert. granted,* 394 Md. 307, 905 A.2d 842 (2006).

Mr. Brown attempts to distinguish his case from *McAvoy* by arguing that the field sobriety tests conducted here

amounted to custodial interrogation because they were more detailed than the tests administered in *McAvoy*, and they involved significant effort. He argues that in *McAvoy* the officer administered only two sobriety tests, yet he was subjected to five such tests. Although the detention may have been made slightly longer by virtue of the time it took to conduct the five tests, that fact, without more, did not render Mr. Brown in custody for *Miranda* purposes. And, as we have mentioned, without custody, the question of whether the tests constituted interrogation or its functional equivalent need not be answered.

Because Mr. Brown was not in custody when he performed the field sobriety tests, the protections afforded under *Miranda* simply do not apply. Therefore, Officer Smith was not required to administer *Miranda* warnings and obtain from Mr. Brown a waiver of the rights addressed by the warnings, before administering the field sobriety tests to him.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**